*838 OPINION OF THE COURT
Lewis R. Friedman, J.
Defendant’s summary judgment motion raises a serious question of the meaning of UCC 3-405 (1) (c). The operative facts are not in dispute, only their legal consequences.
This case is the outgrowth of a fraudulent scheme perpetrated by Jerome Rutberg, an insurance agent and broker, who worked with the Baer Insurance Agency in Philadelphia. Rut-berg’s scheme was simple. He would telephone the Guardian Life Insurance Transaction Service representative and request a check for a life insurance loan or policy dividend withdrawal for named policyholders. The policies had all been issued through the Baer Agency and had available loan or dividend values. Plaintiff sent the checks drawn on defendant together with the supporting documentation not to the policyholders’ address of record as its internal procedures would require, but to Rutberg. None of the policyholders in question had requested the checks. Rutberg, who admitted that he had not intended that the policyholders receive the checks or their proceeds, forged the endorsements of the policyholders and cashed the checks in various Philadelphia banks. The scheme lasted from January 1979 to July 1989. In the single cause of action here plaintiff sues for $253,450.88, representing the proceeds of approximately 130 checks drawn from June 5, 1986 to July 9, 1989 on which Rutberg forged the endorsements. The theory of the action is that defendant improperly paid against forged endorsements.
In this motion defendant contends that the forged endorsements are valid with respect to plaintiff pursuant to the "padded payroll” provision of the UCC. As the Court of Appeals has recently noted, the UCC ensures ready negotiability of commercial paper and advances the policy of assigning loss based on the responsibility of the parties. "Article 3 accomplishes these ends by establishing commercially sound rules designed to place the risk of loss attributable to fraud such as forged indorsements with the party best able to prevent them” (Getty Petroleum Corp. v American Express Travel Related Servs. Co., 90 NY2d 322, 326; Prudential-Bache Sec. v Citibank, 73 NY2d 263, 269). The general rule is that a forged endorsement is "wholly inoperative” and a drawee bank must recredit funds improperly paid over a forged endorsement (UCC 1-201 [43]; 3-404 [1]; 4-401). "Article 3, however, shifts the risk of loss to the drawer in situations where the drawer is the party best able to prevent the loss (see, e.g., UCC 3-405, 3-406, 4-406 * * *)” *839 (Getty Petroleum Corp. v American Express Travel Related Servs. Corp., supra, 90 NY2d, at 327). In that vein UCC 3-405 (1) (c) provides:
"[a]n indorsement by any person in the name of a named payee is effective if * * *
"(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.”
If that section applies, the forged instrument is treated as though it bears the actual endorsement of the named payee and payment is proper (Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, 57 NY2d 439, 444).
The question then is whether Rutberg and the Baer Agency were agents or employees of Guardian within the meaning of UCC 3-405 (1) (c). The parties devote a great deal of their voluminous submissions to discussing whether Rutberg was an "agent” or a "broker” within the meaning of Insurance Law cases. The facts are less than illuminating in that regard. The Baer Agency had been a "general agent” of Guardian from 1959 to December 31, 1979. During that time Rutberg was a licensed Guardian agent in Pennsylvania. When Guardian decided to require its general agents to represent it exclusively, litigation ensued between Guardian and Baer. It appears that the matter was resolved, but the only proof of the details of the settlement that discovery has revealed is that, as Rutberg testified, there was some form of "special relationship” between Baer and Guardian so that Baer did not have to go through the newly appointed general agent in dealing with Guardian. Although defendant appears to make much of the designation of Baer as "Agent of Record” with respect to the policies, Guardian testified that the term only reflected that Baer was entitled to receive the commissions on the policy. It is undisputed that Baer and Rutberg dealt directly with Guardian at all times with respect to the servicing of the policies, ánd did not go through the general agent as others were required to do. In addition, after applications for new policies were sent through the Wilson Agency to Guardian, Rutberg would follow up with the underwriters directly, some of whom he suspected did not know that Baer and Rutberg were no longer "agents”. Guardian relies on a brokerage agreement between Baer and Arthur Cox Wilson & Associates, the general agent, for its conclusion that Rutberg was no more than a "broker” who represented the policyholders and was not an "agent” of the carrier.
*840 The court need not resolve the Insurance Law question, whether under New York or Pennsylvania law,* for the issues posed by the UCC do not involve what the responsibilities of the parties were with respect to the placing of insurance and the entitlement to commission. Once the court recognizes that the UCC section is a risk allocation one, as the Court in Getty Petroleum (supra) has made clear, the issue is whether Guardian was in the best position to prevent the loss. Official Comment 4 to the section states that the reason for the allocation of risk to the maker is "that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance” (UCC 3-405, Official Comment 4, McKinney’s Cons Laws of NY, Book 621/2, at 216). Guardian contends that the Comment refers only to employees or agents under Guardian’s direct control, while defendant reads the Comment more broadly.
There are very few cases that interpret the padded payroll provision of the UCC where the forger is not an actual employee of the maker of the check. The only reported New York case on the application of UCC 3-405 (1) (c) to insurance situations is not particularly helpful. In McIlmoyl v United States Life Ins. Co. (125 Misc 2d 923, 926 [Sup Ct, Schenectady County 1984]), the court noted that the defendant MacArevey was "a licensed agent of the drawer of the check, U. S. Life”. In that case the scheme was that the "agent” used documents with the plaintiff’s signature to obtain policy loans that had not been requested and then forged the plaintiff’s endorsement on the checks. The court found the endorsements good pursuant to UCC 3-405 (1) (c). The decision contains no details of the "agency” relationship between MacArevey and U. S. Life. Here Guardian concedes that "where an actual agent of an insurer was the actor” (mem, at 3) the UCC section would apply.
Cases in other courts shed some light on the type of analysis the court should perform. In LifeUSA Ins. Co. v Continental Bank (1996 WL 18974 [US Dist Ct, ND Ill, Jan. 18, 1996]), the *841 insurance agent Brackman submitted a falsified annuity application which contained his own address along with the client’s check. He requested a refund from the carrier, which was mailed to him; he then forged the endorsement. The court rejected a formalistic analysis of the "agent-broker” distinction even though Brackman was, according to the documents, a "general agent” of the carrier. "The question is not, however, whether Brackman acted beyond the scope of his authority but rather whether LifeUSA authorized him to supply it with the information it needed to prepare a refund check in the event an insured wished to cancel the policy” (1996 WL 18974, at 6). A similar analysis was done in Witten Prods. v Republic Bank & Trust Co. (102 NC App 88, 91, 401 SE2d 388, 390 [1991]). As one leading commentator has noted "the only significant element is whether the drawer had authorized the particular person to prepare the instrument in question or supply the information from which the commercial paper could be prepared” (6 Anderson, Uniform Commercial Code § 3-405:54, at 406 [3d rev ed]).
The court finds that the uncontested facts in this case present the situation for which UCC 3-405 (1) (c) was designed. Rut-berg was a sufficient agent of Guardian that it relied on him for the issuance of checks, without any documentation from the policyholder, the Wilson Agency, the general agent, or even anyone else at the Baer Agency, the agent of record. The checks were concededly drawn by Guardian in the policyholder’s name solely at Rutberg’s oral request. Guardian could have, but did not, exercise reasonable control over the checks by having them sent directly to the registered address of the policyholder or by sending the policyholder a notice that a check had been sent to the agent of record. Patently Guardian was in the best position to prevent the losses by its practices and supervision of the persons who directed the authorization of the checks (see, Getty Petroleum Corp. v American Express Travel Related Servs. Co., 90 NY2d 322, supra). The court notes that the New York legislative policy is not to read UCC 3-405 narrowly (see, Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, 57 NY2d 439, supra). It is irrelevant whether Rut-berg was acting in excess of his authority since UCC 3-405 (1) (c) would only apply where the acts were not authorized.
The court finds that the undisputed proof establishes that the checks were issued by Guardian in the name of persons *842 provided by its own agent, who had no intent that the payee receive the funds. Therefore the endorsements, even though forged, were sufficient.
The motion for summary judgment of dismissal is granted.

 Most likely Pennsylvania law would apply to the question since the "agency” operated in Pennsylvania, with respect to Pennsylvania policies, even though Guardian operates in New York. It appears that the mere labeling of an entity as "broker” or "agent” is not dispositive since the court must examine the particular circumstances and the actual acts involved (see, Sands v Granite Mut. Ins. Co., 232 Pa Super 70, 76-78, 331 A2d 711, 714-716 [1974]).